# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

ESTHELA RODRIGUEZ,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Case No. EDCV 07-00974 (SH)

MEMORANDUM DECISION
AND ORDER

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Supplemental Security Income. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Memorandum in Support of Plaintiff's Complaint ["Plaintiff's Brief"]; Defendant's Brief with Points

and Authorities ["Defendant's Brief"]), and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed and remanded.

On March 30, 2000, plaintiff Esthela Rodriguez filed an application for Supplemental Security Income, alleged an inability to work since June 1, 1997, due to fibromyalgia and chronic arthritis. (See 1 Administrative Record ["AR"] 126-28, 139-47). On February 19, 2001 (following a hearing on December 7, 2001), an Administrative Law Judge ("ALJ") determined that plaintiff had the following severe impairments -- fibromyalgia, myofascial body pain syndrome, and obesity -- but found that plaintiff was not disabled within the meaning of the Social Security Act. (See 1 AR 77-81).

On August 2, 2002, the Appeals Council remanded the matter to an ALJ for further proceedings. (See 1 AR 99-102).

On March 4, 2003 (following a supplemental hearing on February 18, 2003), an ALJ determined that plaintiff had the severe impairment of type II diabetes mellitus, but found that plaintiff was not disabled within the meaning of the Social Security Act. (See 1 AR 11-19).[1]

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (see 1 AR 3-5), plaintiff filed an action in this Court (Case No. EDCV 03-1136 (SH)).

On March 31, 2003 (subsequent to the 2003 Decision, but prior to filing her federal action), plaintiff filed another application for Supplemental Security Income. On November 5, 2004 (following a supplemental hearing on October 1, 2004), an ALJ determined that plaintiff had the severe impairments of fibromyalgia and type II diabetes

---

[1] Plaintiff had filed another application for Supplemental Security Income on May 6, 2002. (See 1 AR 101; 2 AR 666). The ALJ in the 2003 Decision consolidated that application with plaintiff's first application. (See 1 AR 11).

mellitis, but found that plaintiff was not disabled within the meaning of the Social Security Act. (See 2 AR 666-74).

On November 24, 2004, this Court, finding that the ALJ erred in finding that plaintiff did not suffer from fibromyalgia and that her fibromyalgia was not severe, reversed and remanded the matter pursuant to Sentence 4 of 42 U.S.C. § 405(g). (See 1 AR 960, 978-87).

On May 21, 2007 (following a supplemental hearing on April 26, 2007), the ALJ issued a partially favorable decision. The ALJ found that plaintiff was disabled within the meaning of the Social Security Act from March 1, 2000 through March 31, 2003. However, the ALJ determined that plaintiff had the following severe impairments -- personality disorder, not otherwise specified, depressive disorder, not otherwise specified, psychophysiological reaction due to physical conditions, fibromyalgia, chronic pain syndrome, hypertension, obesity, noninsulin dependent diabetes mellitus, history of early liver disease secondary to hepatitis B virus infection, hyperlipidemia, possible borderline intellectual functioning, and gastroesophageal reflux disease -- but found that plaintiff was not disabled within the meaning of the Social Security Act after March 31, 2003. (See 2 AR 630-39).

Plaintiff then filed the present action in this Court. Based on the parties' stipulation, this Court ordered the matter remanded to locate plaintiff's claims file pursuant to sentence 6 of 42 U.S.C. § 405(g). (See 2 AR 624-27).

On October 18, 2010, following the parties' stipulation, the Court ordered this case reopened.

Plaintiff makes four challenges to the 2007 Decision denying disability benefits for the period after March 31, 2003. Plaintiff alleges the ALJs erred in (1) failing to make proper credibility findings, (2) failing to properly consider the consultative examiner's findings, (3) failing to provide a complete and accurate assessment of plaintiff's residual

functional capacity, and (4) failing to pose a complete hypothetical to the vocational expert.

For the reasons discussed below, the Court finds that plaintiff's first claim of error has merit. Since the matter is remanded for further proceeding based on plaintiff's first claim of error, the Court will not address plaintiff's second, third or fourth claims of error.

## **DISCUSSION**

### **ISSUE NO. 1:**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for finding plaintiff not entirely credible as of April 1, 2003. Defendant argues that the ALJ provided valid reasons for finding plaintiff not fully credible.

In her initial Disability Report, plaintiff complained of fibromyalgia and chronic arthritis. Plaintiff stated she could not work because of inflammation and pain in her joints and no strength in her hands. (See 1 AR 139-40).

In a Daily Activities Questionnaire dated April 21, 2000, plaintiff stated that because of body and joint pain she had to rest after sending her kids to school. Plaintiff further stated that she performed light chores such as helping her husband cook or setting the table, that her husband and her sisters prepared and cooked the meals most of the time (her hands were too swollen), that her husband did the shopping most of the time, that someone drove her most of the time, that she needed help with bathing herself the days on which her pain was very bad, and that she had to take medication to sleep every day. Plaintiff further stated that she had difficulty in following written or verbal instructions because of difficulty in concentration, and that she could not work because her "whole body hurts[.]" (See 1 AR 157-62).

In a Pain Questionnaire dated April 19, 2000, plaintiff stated that every day she had pain in her whole body which lasted for days, that her pain was brought on by body

4

movement, that she had been taking medicine (Tylenol, Robaxin) for years, and that the medicine relieved the pain "somewhat" but caused her to become drowsy and nauseous. (See 1 AR 169-71).

In a disability report dated May 6, 2002, plaintiff complained of fibromyalgia, diabetes, chronic arthritis, depression and anxiety. Plaintiff stated she could not work because of severe pain all over her body and because of lack of sleep, migraine headaches, and medication. (See 1 AR 495-504).

In a Daily Activities Questionnaire dated May 20, 2002, plaintiff stated that after getting up she takes her medicine and blood test, and then helps her husband get her children ready. Plaintiff further stated that she could not sleep because her body and head hurt, and that she took medicine to sleep every day. Plaintiff further stated that she was unable to put on her shoes, pick up or hold plates (or even cups when the pain was severe), or lift pots and pans without assistance. Plaintiff further stated that she was able to prepare salads and sandwiches (but needed help with "big cooking"), to shop (but needed help carrying bags), to make her bed (but needed help pulling sheets off the bed), and to put clothes away (but needed help folding the clothes). Plaintiff further stated that she had difficulty paying attention during conversations and that she did not do activities or hobbies because of her pain. Plaintiff further stated she had problems concentrating, that she had trouble finishing chores, and that she could not work because of her pain, stress, depression and medication. (See 1 AR 511-16).

In a Pain Questionnaire dated May 20, 2002, plaintiff stated that she had pain everywhere (especially in her joints) that lasts all day, that rest relieved the pain a little, that a massage and daily medicine (Tylenol, Clinoril) slightly relieved the pain, and that the medicine caused drowsiness and dizziness. Plaintiff further stated that she was not able to walk, shop, visit, cook, visit with relatives or go out with her kids because of the pain. Plaintiff further stated she was able to do light housekeeping chores and do errands

such as going to the Post Office or grocery store without assistance (but that she needed assistance with washing dishes, cooking, and vacuuming). (See 1 AR 525-27).

In a Pain Questionnaire dated September 23, 2002, plaintiff stated that she had pain all over her body (particularly her joints), that she always was in pain, that rest and medicine (Tylenol, Donatol) did not really relieve the pain (but only calmed it), and that the medicines caused upset stomach, constipation, lightheadedness, dizziness, drowsiness, nausea, and an impairment in driving or working with machinery. Plaintiff further stated that she could not do many things because of the pain, and that she needed help cooking, cleaning and dusting. (See 1 AR 178-80).

In a Reconsideration Disability Report dated August 12, 2002, plaintiff stated that her diabetes and fibromyalgia had gotten worse, and that she suffered more pain and could not sleep or go anywhere. (See 1 AR 536-39).

On April 26, 2007 (the remand hearing), plaintiff testified that she had lost about twenty pounds since March 2000, and that she had lost such weight (based on her diet) after being diagnosed with diabetes two to three years earlier. She had a problem with her liver in 2000 (and had experienced pain in 2004), but she was not aware of any continuing problem with her liver (her liver had been fine for three or four years) (See 2 AR 1177-79).

Plaintiff also testified that she had not worked since March 2003 because of constant pain all over her body (including her arms, legs, knees, back, neck and muscles) and almost constant fatigue. Her pain interferes with her ability to sleep at night. She gets migraine headaches because of her lack of sleep. Her fibroymalgia is treated with Vicodin, Ben Gay, and (for approximately one year) pain shots (in the hips) at the clinic every two weeks. She is not seeing any mental health practitioner. She lives with eight other people in a house. Although she has a driver's license, she hardly drives. She once in a while goes grocery shopping with her daughter who drives. (See 2 AR 1194-96, 1197-98).

After discussing plaintiff's testimony, the ALJ stated, "After considering the evidence of record, I find the claimant's medially determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible beginning on April 1, 2003." (2 AR 637).

The ALJ then wrote the following:

> While the analysis of the consulting rheumatologist on remand confirmed the findings of fibromyalgia and chronic pain syndrome, it also emphasized the significance of the claimant's underlying depression and concluded that the evidence of record did not establish a disabling impairment. Furthermore, the psychological evaluation on remand showed that the claimant's primary mental impairment involved a personality disorder, that her depression was reactive in nature, and that her intellectual functioning while reduced either because of an underlying organic problem or secondary to her depression was still in the borderline range, which Dr. Malacharubil indicated would not preclude work performed within the limits found herein above. Indeed, the psychological evaluation findings on remand were consistent with those at Exhibit 12F[2] and indicated at least a serious lack of motivation consistent with the claimant's poor work history, which makes it reasonable to find the claimant not motivated to seek and maintain regular employment, as well as possible symptom fabrication given the uneven findings of impaired concentration and attention as well as the noted lack of cooperation.[3] Indeed, while the claimant's characterization of her

---

[2] A report of a June 10, 2002 psychiatric evaluation of plaintiff prepared by consultative examiner Divy Kikani, M.D., a psychiatrist. (See 2 AR 1036-39).

[3] The February 2, 2007 report of the psychological evaluation prepared by consultative examiner Mark Pierce, Ph.D (a psychologist) stated inter alia that "[t]he claimant continues with a negative response today, including dramatic failure of a malingering-sensitive memory measure, so that accurate cognitive evaluation proves

(continued...)

symptoms has varied over time with various complaints of pain, fatigue, and depression, the record as whole has not indicated any significant change in the intensity or frequency of her complaints, and the recent treating sources have considered her condition to be mild, which is quite consistent with the findings of the consultative examiners who indicated she had a capacity for light work and rather mild mental limitations. Ex. 21 F at 4.[4] (2 AR 637, footnotes added).

The ALJ concluded, "Given the evidence of medical improvement noted above, it is reasonable to conclude that the claimant's allegations are at least exaggerated as indicated by the noted treating source impression of her symptoms." (Id.).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the pain. Smolen v. Chater, 157 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is

---

[3] (...continued)
impossible"; that "[t]he claimant's general attitude was characterized by deteriorated effort interest, and compliance"; that "[t]he claimant is primarily notable for limited cooperation and a lack of good-faith effort with attempts at cognitive testing today"; and that "she was negativistic from arrival at the clinic, constantly complaining of having to sit and wait". (2 AR 1075-80).
  The ALJ described that evaluation as follows:
  The consultative psychological evaluation obtained on remand was remarkable for signs of limited motivation to participate in the psychological testing and formal mental status examination, the examiner noting the inconsistency between the claimant being fairly focused in terms of attention and concentration during the interview, but showing poorer responses on formal and clinical tests of concentration and attention as well as noting generally poor effort on all formal tests and signs of negativistic and borderline personality traits consistent with the history of problems with employment due to poor interpersonal relationships, her longest job having been as an assembler as compared to other work as a cashier. (2 AR 634).

[4]    The record of a treating physician dated November 9, 2006 stated inter alia that plaintiff has "controlled" Type II diabetes and "currently mildly symptomatic" fibroymalgia. (See 2 AR 1094).

no evidence of malingering,[5] the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating clear and convincing reasons for doing so. Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). "[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion." Bunnell v. Sullivan, supra.

Here, substantial evidence does not support the ALJ's finding that plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible beginning on April 1, 2003.[6] Three reasons given by the ALJ -- the significant evidence of medical improvement after March 31, 2003; the lack of "any significant change in the intensity or frequency of [plaintiff's] complaints"; and the mild findings by plaintiff's treating sources -- are not sufficient bases, by themselves, for partially rejecting plaintiff's testimony. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998). Moreover, while the ALJ discredited plaintiff's testimony in part based on her lack of cooperation at the 2007 psychological examination, her lack of cooperation was limited to the area of "cognitive testing" (and therefore would not relate to her physical impairments), and there is no indication in the medical record that plaintiff did not cooperate in the other consultative examinations. Compare Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)(finding that the ALJ properly discredited the plaintiff's testimony based, in part,

---

[5] Contrary to defendant's implied assertion (see Defendant's Brief at 6), the ALJ's determination about plaintiff's credibility was not based on affirmative evidence of plaintiff's malingering.

[6] The Court will not consider reasons for finding plaintiff not fully credible (i.e., "a conservative course of treatment," stopping "her mental health treatment in 2005", and not following up on treating physician's 2006 advice to return to the mental health clinic, see Defendant's Brief at 4-5) that were not given by the ALJ in the 2007 Decision. See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 US 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

9

on the plaintiff's lack of cooperation during consultative examinations). Therefore, plaintiff's failure to cooperate at the consultative examination was not a sufficient basis for partially rejecting plaintiff's testimony.

Thus, the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her pain and symptoms. Accordingly, the ALJ erred in finding plaintiff's testimony was not fully credible.

## **ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings in accordance with the decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g).

DATED: May 25, 2011

/s/ Stephen J. Hillman

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE